# EXHIBIT A:

# Original Petition

CC-12-06786-D   FILED

| | | |
|---|---|---|
| LAZO TECHNOLOGIES, INC., | § | IN THE COUNTY COURT AT LAW |
| W & R TECHNOLOGY LLC, D/B/A ATS | § | 2012 NOV -9 PM 4:07 |
| SOUTH D/B/A ADVANCED TECHNOLOGY | § | |
| SOLUTIONS SOUTH, AND EDDIE HILL D/B/A | § | |
| HILL PROFESSIONAL SERVICES | § | JOHN F. WARREN |
|     Plaintiffs, | § | COUNTY CLERK |
| | § | DALLAS COUNTY |
| | § | NO. 4 |
| v. | § | |
| | § | |
| HEWLETT-PACKARD COMPANY; | § | |
| GARRETT GOETERS; AND DOES 1-5 | § | |
|     Defendants. | § | |
| | § | DALLAS COUNTY, TEXAS |

## ORIGINAL PETITION

COME NOW LAZO TECHNOLOGIES, INC., W & R TECHNOLOGY LLC, D/B/A ATS SOUTH D/B/A ADVANCED TECHNOLOGY SOLUTIONS SOUTH and EDDIE HILL D/B/A HILL PROFESSIONAL SERVICES, (collectively "Plaintiffs") and file this Original Petition in the above-referenced cause complaining of Defendants HEWLETT-PACKARD COMPANY; GARRETT GOETERS; and DOES 1-5, (collectively "Defendants") and in support of same would show the Court as follows:

## DISCOVERY CONTROL PLAN

This case is intended to be conducted under discovery Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

## PARTIES AND SERVICE

1.    Plaintiff LAZO TECHNOLOGIES, Inc. is a minority owned business specializing in electro-mechanical assembly for the telecommunications industry and other services such as IT/IS development, cabling and high-tech recruiting for Fortune 500 companies, with its principal place of business located at 611 West Mockingbird Lane, Dallas, TX 75247.

2.    Plaintiff W & R TECHNOLOGY LLC, is a minority owned business specializing in providing electronics service, also operating under the names of ATS South, Advanced Technology Solutions South and Advanced Technological Solutions South, with a principal place of business located at 2220 Le Mesa Street, Dallas, TX 75215.

ORIGINAL PETITION    1

3. Plaintiff Eddie Hill is a resident of the State of Texas doing business as HILL PROFESSIONAL SERVICES, a minority owned business specializing in providing technology services and consulting for E-Rate projects, with its principal place of business located at 3612 Sailmaker Lane, Plano, TX 75023.

4. Defendant HEWLETT-PACKARD COMPANY (hereafter "HP"), is a global provider of computer products, technologies, solutions and services to consumers and businesses, and at all times herein was doing business in the State of Texas. HP may be served with process by serving its registered agent, CT Corp System, 350 N. Saint Paul Street, Suite 2900, Dallas, TX 75201.

5. Defendant GARRET GOETERS is a resident of the State of Texas and was an HP Enterprise Account Manager at all times relevant to this Petition. He may be served with process by serving him at his current residence located at 2317 Rio Mesa Drive, Austin, Texas.

6. Defendant DOES 1-5 are persons or entities either residing or doing business within the State of Texas, who are associated with Defendants, whose names are not currently known, but who either benefited, received inappropriate goods, services, or valuable considerations from the actions committed by named Defendants and named Defendants attempt to collude with DOES. They may be served with process by service upon them at their business addresses or service upon their registered agents residing in Dallas, Texas.

## JURISDICTION AND VENUE

7. This court has jurisdiction over this case because HP partnered with Micro Systems Engineering (hereafter "MSE"), a Houston-based HP reseller, in September 2002 in order to form a larger consortium ("Consortium") of which Plaintiffs became members for the implementation of a project to provide and interconnect 8,000 new Compaq Evo desktop PC's to replace older PC's; provision and installation of other equipment; provision of cabling and interconnection installation and servicing; support and management and other equipment and services ("USAC Work") for the Dallas Independent School District (hereafter "DISD"). HP was responsible for the provision of its computers, computer equipment and related products; and the acquisition, implementation, desk side support, help desk

support, project management and asset disposal for the project. At all times material herein, HP was doing business in Dallas County, Texas, and provided all of the support and service hereunder in Dallas County. Thus, specific jurisdiction lies in Dallas County. Additionally, HP engages in extensive business in Dallas County and is subject to the general jurisdiction of its Courts.

8. Each of the individual Defendants resided in Dallas County, Texas at the time the causes of action herein accrued. Additionally, each individual Defendant openly and continuously conducted business in Dallas County at all times relevant to this Petition and is thereby subject to the jurisdiction of this Court.

9. Venue of this action is proper in Dallas County because all or a substantial part of the events or omissions giving rise to claims herein occurred in Dallas County and/or one or more of the defendants resided in Dallas County at the time the causes of action herein accrued.

## STATEMENT OF FACTS APPLICABLE TO ALL CAUSES OF ACTION

10. The Universal Service Administrative Company (hereafter "USAC") is an independent American non-profit corporation designated as the administrator of the federal Universal Service Fund (USF) by the Federal Communications Commission ("FCC"). Administrative oversight is invested in the FCC, and the FCC has final decision-making authority over actions taken by USAC.

11. Among the programs administered by USAC is the Schools and Libraries program (hereafter "SLD"). Pursuant to this program, eligible school districts and others issue requests for proposals (hereafter "RFPs") for telecommunications and internet connections and other communications service programs. Once a bidder is approved, the school district generally pays between ten and twenty percent of the total cost and USAC pays the balance. USAC is funded from the "universal service charge" that appears on every telephone consumer's bill.

12. Bribery, collusion, inside information trading and other illegal conduct are prohibited in government contract billing and RFP processes. A successful bidder that is found to have engaged in any

of these prohibited practices may have their contracts cancelled, be forced to repay amounts collected by them in the provision of goods and services, and may be debarred from participation in future contracts.

13. In approximately January of 2003, Plaintiffs joined the Consortium to provide the USAC Work to the DISD pursuant to its RFP for internet equipment and installation services. Plaintiffs were to provide the cabling, wiring and installation ("Installation") of the HP equipment. The Consortium was to be paid for its work partly by the DISD and partly by USAC. DISD paid its portion.

14. Plaintiffs hereunder were members of the Consortium, as were Defendant HP and a number of other companies. The Consortium was awarded the contract for the USAC Work on or about February of 2003. USAC audited the Consortium in March of 2003 and determined that the award and conduct of DISD and the Consortium was in compliance with the rules applicable to the RFP process.

15. In approximately June of 2004, Plaintiffs began conducting their Installation work for the Consortium. USAC and DISD made progress payments to the Consortium, and Plaintiffs received partial progress payments through the Consortium. The National Carrier Exchange Association performed an investigation of the DISD RFP process and determined that the process was conducted in accordance with applicable rules.

16. In July of 2005, the Dallas Morning News ran an article discussing possible wrong doing regarding the lead member of the Consortium, Micro Systems Engineering (hereafter "MSE"), its President, Frankie Wong, DISD and a DISD officer named Ruben Bohuchot. As a result of that article USAC suspended payments to the Consortium while an investigation was undertaken.

17. Investigations by DISD, the law firms of Carrington, Coleman and Haynes & Boone, and USAC failed to uncover any evidence of wrongdoing. USAC subsequently resumed payments in October of 2005.

18. In the Fall of 2006, Plaintiffs completed their Installation work, and submitted their final invoices through the Consortium to USAC for payment. Prior to the payments being made to the Plaintiffs for the work that they performed, indictments were issued to Frankie Wong and Ruben Bohuchot. In May of 2007, Frankie Wong of MSE, the lead entity in the Consortium, and Ruben

Bohuchot of DISD, were indicted for bribery, conspiracy, and money laundering in connection with the Consortium being named the successful bidder for the USAC Work. They were convicted in July of 2008, and were debarred by the FCC on August 27, 2009.

19. In May of 2009, USAC denied further payments to the Consortium, including the payments that were due Plaintiffs. In order to exhaust their administrative remedies, Plaintiffs were required to appeal the denial of USAC's decision to the FCC. After an initial finding by the Wireline Competition Bureau, the FCC issued a final denial of Plaintiffs' request for payment for the USAC Work it performed. The FCC's final denial was issued on November 29, 2011. The FCC's issuance of this order exhausted all of the Plaintiffs' administrative remedies and constituted a final and binding determination that Plaintiffs were not entitled to payment for its work due to the illegal conduct of Defendants and other parties.

20. In connection with the underlying bribery scheme, and unbeknownst to Plaintiffs, two *qui tam* actions had been filed against all of the members of the Consortium, DISD and the Houston Independent School District (on an unrelated matter not germane to this suit). The U. S. District Court in Dallas, Texas, where the qui tam cases were pending, issued an order unsealing the qui tam case on November 15, 2010. The Department of Justice ("DOJ") announced a settlement with HP for its participation in bribery and other illegal conduct that was not previously public. The DOJ announced its intention to assume the *qui tam* action against MSE, but declined to move against the other members of the Consortium, including Plaintiffs.

21. Even though Plaintiffs were named in the *qui tam*, as *qui tam* actions are filed and maintained under seal, Plaintiffs were prohibited by law from knowing of its existence or the underlying facts. DOJ investigations and actions regarding E-Rate investigations against HP have been exempt from disclosure, even Freedom of Information Act disclosure. Even after the *qui tam* was unsealed, the Office of Inspector General for the FCC, continued to deny requests for information. The government non-disclosure rules have continued to inhibit Plaintiffs' from discovery of HP's misconduct during the competitive bidding process. It was not until the *qui tam* case was unsealed that Plaintiffs discovered, or

ORIGINAL PETITION 5

by exercising reasonable diligence could have discovered, HP's conduct and involvement in the bribery scheme.

22. After the *qui tam* case was unsealed, Plaintiffs determined that one or more HP employees engaged in conduct of which Plaintiffs were not previously aware, even after a due diligence review and at least four prior investigations. The conduct by HP employees directly contributed to USAC denial of funding.

23. HP employees met with MSE and DISD prior to the RFP being issued by DISD and discussed elements of the pending RFP, both activities are in violation of the rules for the RFP process. HP employees worked with MSE to land the seat contracts and obtain inside information on the RFPs from DISD employees. HP employees apparently also provided gifts and meals to DISD employees that were not disclosed and otherwise prohibited.

24. HP and MSE were co-signers of the Consortium Agreement with Plaintiffs. They provided the equipment that the Plaintiffs were required to install. HP and Defendants collectively had a fiduciary relationship as co-partners, or co-venturers, and engaged in illegal activity that caused Plaintiffs to be prevented from collecting proper payment for the work they performed.

## **FRAUD**

Plaintiffs repeat and re-allege all of the foregoing paragraphs and all subsequent paragraphs as if fully copied and set forth at length herein and further shows as follows:

25. The Defendants made material representations, through phone conversations, business meetings, and documents, to Plaintiffs that they did not conduct any activities that would result in the rigging or subverting of the competitive bidding processes for E-Rate contracts through violations of school district policies or rules and E-Rate Program rules. These material representations were false and/or misleading and induced Plaintiffs to provide the Installation Work.

26. Defendants schemed and colluded to rig the competitive bidding process for E-Rate contracts by providing illegal gifts of goods and services to DISD officials and other school district officials in exchange for them providing Defendants with favorable consideration in the bidding process

for and/or contracts to provide technology services under DISD's E-Rate program and/or under E-Rate programs involving other school districts.

27. Defendants intended to induce Plaintiffs to act upon misrepresentations and concealment of their bad acts in order to maintain Plaintiffs' participation in the Consortium. As a result of the Defendants' representations, Plaintiffs did, in fact, continue to provide the Installation Work to their detriment.

28. Plaintiffs actually and justifiably relied on Defendants' representations, which ultimately caused their injury. Plaintiffs are small, minority-owned businesses. Defendant HP is a large global company. Plaintiffs relied on HP's experience and joined the Consortium in order to have the best chance to win the competitive bid for the E-Rate program. Plaintiffs' reliance was actual and justifiable. Upon the assurances of Defendants, Plaintiffs provided their services unbeknownst of the activities of Defendants. As a result, USAC and the FCC denied Plaintiffs payment for their USAC Work, which resulted in their injury. Plaintiffs seek judgment against the Defendants for both actual and punitive damages.

## **BREACH OF FIDUCIARY DUTY**

Plaintiffs repeat and re-allege each of the following paragraphs and all subsequent paragraphs as if fully copied and set forth at length herein and further show as follows:

29. As a result of the relationship, which existed between the parties, the Defendants owed a fiduciary duty to the Plaintiffs. The fiduciary obligations arise out of Plaintiffs and HP's participation in the Consortium. The Consortium signifies a partner relationship between the parties where they trust and rely upon one another while transacting business. Additionally, HP acted as agent for Plaintiffs in carrying on business of the Consortium.

30. Partners in a consortium owe each other a duty of loyalty and utmost good faith, candor, integrity of the strictest kind, fair and honest dealing, and a duty of full disclosure.

31. At all times, the Defendants were aware of the rules which prevent bribing of officials party to the E-Rate program. Defendants, through great effort, concealed the fact that employees of Defendants met with MSE and DISD prior to the RFP being issued by DISD and discussed elements of

the pending RFP, worked with MSE to obtain inside information on the RFPs from DISD employees, and apparently bribed DISD employees with gifts that were not disclosed. All of the aforementioned acts are in violation of the rules for the RFP process.

32. The concealment of illicit behavior by Defendants comprises a breach of their fiduciary duty to Plaintiffs.

33. As a result of Defendants breach of fiduciary duties, Plaintiffs were denied payment for services due to Defendants criminal activities, which Plaintiffs had no way of discovering. The FCC's refusal of payment resulted in injury to Plaintiffs who performed services without payment. Defendant HP, however, received payments for its services resulting in a benefit to HP. Plaintiffs seek judgment against the Defendants for both actual and punitive damages.

## NEGLIGENCE

Plaintiffs repeat and re-allege each of the following paragraphs and all subsequent paragraphs as if fully copied and set forth at length herein and further show as follows:

34. The conduct, acts and/or omissions of the Defendants constitute negligence, gross negligence, and/or reckless conduct without regard to the impact of same. Defendants had a legal duty to exercise ordinary care in conducting business on behalf of the consortium. Defendants breached that duty, and Defendants' conduct was the proximate cause of damages for which Plaintiffs seek judgment against Defendants, jointly and/or severally, for their actual and punitive damages.

## TORTIOUS INTERFERENCE WITH EXISTING CONTRACT

Plaintiffs repeat and re-allege each of the following paragraphs and all subsequent paragraphs as if fully copied and set forth at length herein and further show as follows:

35. Plaintiffs had a valid and binding contract to perform services and receive payment for the same. Defendants, by their actions, intentionally and willfully interfered with the contract, and the interference proximately caused injury and damages to Plaintiffs. Accordingly, Plaintiffs seek actual and punitive damages within the jurisdictional limits of this Court.

## CIVIL CONSPIRACY

Plaintiffs repeat and re-allege each of the following paragraphs and all subsequent paragraphs as if fully copied and set forth at length herein and further show as follows:

36. Defendants are comprised of an entity doing business in the State of Texas and its employees. Defendants colluded with one another with the objective of concealing their illicit acts of bribery of DISD officials, meetings with MSE and DISD prior to the RFP being issued by DISD, discussions of elements of the pending RFP, and their work with MSE to obtain inside information on the RFPs from DISD employees. Defendants conducted meetings and came to an agreement on the best course to be taken to achieve the objective of concealment. Defendants made unlawful and overt acts in furtherance of their objective, the act of bribery being the foremost unlawful and overt act. As a result, damages to the Plaintiffs were the proximate result of Defendants actions. Plaintiffs seek damages within the jurisdictional limits of this Court.

## VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT

Plaintiffs repeat and re-allege each of the following paragraphs and all subsequent paragraphs as if fully copied and set forth at length herein and further show as follows:

37. Plaintiffs were consumers as defined in the Deceptive Trade Practices Act. Defendants engaged in false, misleading, and/or deceptive acts listed in the Deceptive Trade Practices Act, such as failing to disclose information concerning goods or services which was known at the time of the transaction where the failure to disclose that information was intended to, and did induce Plaintiffs into a transaction the Plaintiffs would not have entered had the information been disclosed.

38. Defendants false, misleading, and/or deceptive acts were the producing cause of damages sustained by Plaintiffs herein. Plaintiffs seek actual damages, additional statutory damages and attorneys' fees.

## DAMAGES AND OTHER RELIEF

Plaintiffs repeat and re-allege each of the following paragraphs and all subsequent paragraphs as if fully copied and set forth at length herein and further show as follows:

39. Plaintiffs seek recovery of all damages from the Defendants, jointly and/or severally, to which each may be entitled to at law or in equity, including but not limited to the following: direct, indirect, actual, special, general, consequential, reliance, expectancy, benefit of bargain, lost profits, personal injury damages, past and future damages, and other damages of every nature and type which were the result of Defendants actions in this case.

40. Defendants' conduct as heretofore alleged was intentional, willful, wanton, malicious, grossly negligent and/or done recklessly, done with malice, and done with disregard for the rights of Plaintiffs. Plaintiffs seek recovery of punitive and/or exemplary damages, for which Plaintiffs seek judgment from Defendants, jointly and/or severally, in the maximum amount allowable by law.

## ATTORNEY'S FEES

Plaintiffs repeat and re-allege each of the following paragraphs and all subsequent paragraphs as if fully copied and set forth at length herein and further show as follows:

41. Plaintiffs have retained the services of the undersigned licensed attorneys to assist them in connection with this matter. As such, Plaintiffs seek all reasonable and necessary attorney's fees from Defendants, jointly and/or severally, incurred in connection with this matter through trial of this cause, and any subsequent appeals related thereto. Plaintiffs are entitled to attorney's fees pursuant to §38.001 et seq. Texas Civil Practices & Remedies Code, the Texas Deceptive Trade Practices Act, and any other statutory or common law remedy for attorney's fees.

## DEMAND FOR JURY TRIAL

42. Plaintiffs respectfully request a trial by jury.

WHEREFORE, PREMISES CONSIDERED Plaintiffs request that Defendants be cited and noticed to appear and that after their appearance this matter be set for trial and upon such trial, Plaintiffs have judgment against Defendants, jointly and/or severally, for:

1. All actual, compensatory, consequential, reliance and/or expectancy damages caused by Defendants;

2. Punitive, exemplary, additional and all other damages requested hereinabove against Defendants;

3.  Reasonable and necessary attorneys' fees;

4.  Prejudgment and post-judgment interest at the highest legal rate allowed by law;

5.  All costs of suit; and/or

6.  All other relief, both general and special, at law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

James E. Pennington
State Bar No. 15758510
Law Offices of James E. Pennington, P.C.
900 Jackson Street, Suite 440
Dallas, Texas 75202-4473
Office: 214-741-3022
Fax: 214-741-3055
jep@jeplawyer.com

Walter Steimel, Jr.
State Bar No. 19127500
LOEB & LOEB LLP
901 New York Avenue NW
3rd Floor East
Washington, DC 20001-4432
(202) 618-5015
(202) 478-2924
wsteimel@loeb.com